UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Anita Cress, )
 )
      Plaintiff, )
 )
      v. )    No. 04 C 6583
 )
City of Chicago and Chicago Police Lieutenant )
James Gantz, and Chicago Police Sergeant )
Linda Gonzales, )
 )
      Defendants. )
 )

## MEMORANDUM ORDER AND OPINION

MARVIN E. ASPEN, District Judge:

Presently before us is the City of Chicago's motion for summary judgment on Anita Cress' claim for municipal liability for two police officers' allegedly unconstitutional actions during an investigatory traffic stop. For the reasons discussed below, we grant the City of Chicago's motion and dismiss the case with prejudice.

## BACKGROUND

On July 9, 2004, Lieutenant James Gantz stopped Anita Cress' vehicle at the O'Hare International Airport Police Station parking lot, a restricted area, because he did not recognize her as authorized personnel.[1] (Pl. Facts ¶ 1; Mot. Summ. J. Ex. F; Pl. Facts Ex. 1 at 20-21, 32.) When he approached the car, Lieutenant Gantz requested Cress' driver's license, which she could not produce. (Pl. Facts ¶ 2, Ex. 1 at 32.) Consequently, Lieutenant Gantz ordered Cress out of her vehicle and then solicited assistance over the police radio. (Pl. Facts Ex. 1 at 34; Compl. ¶ 7.)

---

[1] Cress waived any claims pertaining to the propriety of the initial stop. (Pl. Resp. to Def. Facts ¶ 6.)

In response, Sergeant Linda Gonzalez and officers Shober and Riordan reported to the scene. (Compl. ¶¶ 7,9, 15; Pl. Facts Ex. 1 at 32, 34.)

Officers Shober and Riordan searched Cress' car and found her wallet. (Pl. Facts Ex. 2 at 107-08.) Then, Sergeant Gonzalez conducted a search of Cress' body. She put her hands inside Cress' shorts and inside the built-in bra of her tank top to feel around and between her breasts. (Pl. Facts Ex. 2 at 111-13.)

After the officers finished searching Cress' property and person, officers Shober and Riordan spent fifteen minutes filling out a "blue card" (a traffic stop information sheet used when a ticket is not issued). (Pl. Facts Ex. 2 at 105-06, Ex. 4 at 38.)

As a result of the events described above, Anita Cress filed a lawsuit under 42 U.S.C. § 1983 against the City of Chicago ("City"), Lieutenant Gantz, and Sergeant Gonzalez, alleging violations of constitutional restrictions on investigatory searches and seizures. (Compl. ¶¶ 1, 3, 6, 9, 12, 17, 18, 19.) After we denied the City's motion to dismiss the complaint, the City filed a motion for summary judgment, arguing that there is no evidence that the officers acted pursuant to an unlawful City policy. In response, Cress proffers Lieutenant Dwight Bleke's affidavit and Sergeant Gonzalez's testimony to show the existence of a City policy to engage in searches in violation of the Supreme Court's mandate in *Terry v. Ohio,* 392 U.S. 1, 21, 27, 88 S. Ct. 1868 (1968)*,* and a policy requiring detention while officers fulfill procedural requirements in violation of the Supreme Court's holding in *United States v. Sharpe*, 470 U.S. 675, 686, 105 S. Ct. 1568 (1985). Cress urges us to deny the motion for summary judgment because a question of fact exists as to whether the officers violated her constitutional right to be free from unreasonable searches and seizures while executing the City's unlawful policies.

**STANDARD OF REVIEW**

Summary judgment is proper only when "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed R. Civ. P. 56(c). A genuine issue for trial exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505 (1986). This standard places the initial burden on the moving party to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986) (quotation marks omitted). Once the moving party meets this burden of production, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading" but rather "must set forth specific facts showing that there is a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e). In deciding whether summary judgment is appropriate, we must accept the nonmoving party's evidence as true, and draw all inferences in that party's favor. *See Anderson*, 477 U.S. at 255.

## ANALYSIS

To prevail on a § 1983 claim, Cress must show that "defendants deprived [her] of a right secured by the Constitution or laws of the United States, and that the defendants acted under color of state law." *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005) (quoting *Brokaw v. Mercer County,* 235 F.3d 1000, 1009 (7th Cir. 2000)). However, since "a municipality cannot be held liable under § 1983 on a respondent superior theory[,]" the City of Chicago ("City") will only be held liable for its officers' actions if Cress demonstrates that the police officers violated her rights while acting pursuant to a unlawful City policy or custom. *Monell v. New York City Dep't of Soc. Svcs.*, 436 U.S. 658, 691, 694, 98 S. Ct. 2018 (1978); *see also Gable v. City of Chicago,* 296 F.3d 531, 537 (7th Cir.

2002) (holding that a plaintiff "must establish ... a 'policy or custom' attributable to municipal policymakers ... [and that] the policy or custom was the 'moving force' behind the constitutional deprivation" for municipal liability under § 1983); *see also Jones v. City of Chicago*, 787 F.2d 200, 203 (7th Cir. 1986) ("[A] plaintiff may establish municipal liability ... if she can show the existence of a policy or custom and a sufficient causal link between the policy or custom and the constitutional deprivation."). "A policy, custom, or practice can take the form of: (1) an ordinance or written directive; (2) a persistent custom that rises to the level of a de facto policy; or (3) an action taken by an official policymaker." *Davis v. City of Chicago*, No. 00 C 4432, 2001 WL 467932, at *2 (N.D. Ill. Apr. 30, 2001) (citing *McTigue v. City of Chicago*, 60 F.3d 381, 382 (7th Cir. 1995)).

As a threshold matter, Cress concedes that the City's written policy on protective searches comports with constitutional jurisprudence. (*See* Opp'n to Mot. Summ. J. at 6; *see also* Mot. Summ. J. Ex. F.) The City's policy, entitled *Interrogations: Field and Custodial,* permits police officers to conduct "a carefully limited search of the outer clothing" of a person reasonably suspected of being armed and dangerous for safety purposes.[2] (Mot. Summ. J. Ex. F.) Nonetheless, Cress argues

---

[2] The City's policy is as follows:
> When a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity is present or imminent and that the person with whom he is dealing may be armed and dangerous; when in the course of investigating his behavior he identifies himself as a peace officer and makes reasonable inquiries; and when nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others safety, he is entitled, for the protection of himself and others in the area, to conduct a carefully limited search of the outer clothing of such person in an attempt to discover weapons which might be used to commit an assault upon him. Purses of females, attache cases, etc., may be given a very carefully limited examination solely to discover weapons.

that one sentence in Lieutenant Bleke's affidavit - viewed in isolation- demonstrates that "the actual practice of Chicago police officers is ... to conduct a protective pat down search of a suspect's outer clothing to determine if the suspect is armed, without regard to specific and articulable facts" as required by *Terry v. Ohio*. (Opp'n Mot. Summ. J. at 6 (quotation and citations omitted)). Despite viewing the evidence in the light most favorable to Cress, we find that Lieutenant Bleke's affidavit supports, rather than contradicts, the City's written and undisputedly lawful policy. Consequently, Cress cannot show that Sergeant Gonzalez acted pursuant to the City's policy when she allegedly violated Cress' constitutional right to be free from unreasonable searches. Therefore, we grant the City's motion with respect to this claim.

Next, we turn to Cress' claim that she was subjected to an unreasonable seizure while the officers filled out a "blue card that is required by the rules and regulations of the Chicago police department when a motorist is stopped and a ticket is not issued." (Opp'n Mot. Summ. J. at 6-7.) However, Cress failed to submit *any* evidence of a City policy or practice involving the procedure for issuing blue cards.[3] Therefore, a reasonable jury could not find that the officers acted pursuant

---

The sole justification of an officer's search of a person whom he has no cause to arrest is the protection of the officer and others nearby, and it must, therefore, be confined to a search reasonably designed to discover guns, knives, clubs or other hidden instruments which could be used to assault the officer. An officer does not exceed a reasonable scope of search by patting down outer clothing. He must refrain from placing his hands in the pocket or under the outer surface of garments until he feels weapon(s). At that time, the officer should merely reach for and remove the weapon(s). If the weapon is not lawfully possessed, the person searched should then be immediately placed under arrest and a more thorough search conducted.

[3] Cress cites to a portion of Lieutenant Gonzales's deposition as evincing a City policy regarding blue cards. However, Lieutenant Gonzales merely distinguished a "blue card" from a "white card," which is issued when an officer writes a citation. (Pl. Facts Ex. 4.)

to a municipal policy when they detained Cress while completing a "blue card."

## CONCLUSION

For the above reasons, we find that Cress failed to meet her burden to produce evidence of a nexus between the City's policies and the officers allegedly unconstitutional conduct. Therefore, we grant the City's motion for summary judgment.

                                                            MARVIN E. ASPEN
                                                            United States District Judge

Dated: 1/27/06